IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

YADIRA MOLINA,

    **Plaintiff,**

           v.

MUNICIPIO DE SAN JUAN,

    **Defendant.**

CIVIL NO. 18-1079 (JAG)

### OPINION AND ORDER

GARCIA-GREGORY, D.J.

Plaintiff Yadira Molina ("Molina") brought this action alleging retaliation under 42 U.S.C. § 1983 ("Section 1983") for exercising her First Amendment rights; constructive discharge based on a hostile work environment; payment of statutory benefits; and violations of Puerto Rico law, including Law 115 of December 20, 1991 ("Law 115"), as amended, P.R. LAWS ANN. tit. 29, § 194a; and Articles 1802 and 1803 of Puerto Rico's Civil Code ("Articles 1802 and 1803"), PR LAWS ANN. tit. 31, §§ 5141-42.[1] Docket No. 46.

Pending before the Court are Defendant Municipio de San Juan's ("the Municipality") Motion for Summary Judgment, Docket No. 97; Molina's Response in Opposition, Docket No. 111; and the Municipality's Reply, Docket No. 121. For the reasons stated below, the Motion for Summary Judgment is hereby **GRANTED**.

---

[1] While the Municipality requests dismissal of a Law 80 claim, Docket No. 97 at 25, no such claim is asserted in the Amended Complaint, *see* Docket No. 46.

CIVIL NO. 18-1079 (JAG)                                                      2

FINDINGS OF FACT

**I.    Non-Compliance with Local Civil Rule 56**

Before addressing the merits of the Motion for Summary Judgment, the Court notes that Molina failed to comply with Local Civil Rule 56(c). "[A] party's denial or qualification of a proposed fact must be *strictly limited* to the issue therein raised. Any additional information shall be included in a separate section in order to ease the Court's task." *Acevedo-Padilla v. Novartis Ex Lax, Inc.*, 740 F. Supp. 2d 293, 298 (D.P.R. 2010) (emphasis added), *rev'd and remanded on other grounds sub nom. Acevedo-Parrilla v. Novartis Ex-Lax, Inc.*, 696 F.3d 128 (1st Cir. 2012). Here, Molina's response to the Municipality's 10-page Statement of Uncontested Material Facts ("SUMF") consists of 70 pages. *See* Docket No. 106. This is neither short nor concise. Molina included additional information with almost every denial or qualification, and the objections did not always directly refute or qualify the proposed fact. Molina included additional facts multiple times throughout the response that should have been listed in the separate statement of additional facts. *See, e.g.*, Docket No. 106, ¶¶ 1, 4, 8, 11, 20, 23, 26, 33, 38, 48, 54, 57, 59, 60, 62, 64, 65, 69. "[Molina] ha[s] filed [dozens] of pages of repetitive arguments, which is precisely what [Local Civil] Rule 56 seeks to avoid, forcing [the Municipality] and the Court to revise numerous pages of sometimes repetitive and irrelevant information. Accordingly, any additional facts provided by [Molina] when denying or qualifying [the Municipality's] SUMF will be disregarded." *Acevedo-Padilla*, 740 F. Supp. 2d at 298-99; *see also Acevedo-Parrilla*, 696 F.3d at 137 ("[T]he district court, in an appropriate exercise of its discretion, ruled that it would disregard any additional facts provided by [the plaintiff] when denying or qualifying [the defendant's] statement of uncontested facts.") (citation omitted).

CIVIL NO. 18-1079 (JAG)                                                                 3

Moreover, Molina also cites her Amended Complaint approximately twenty-eight times[2] even though "a non-moving party cannot rely upon allegations in a complaint to contest a motion for summary judgment." *De La Vega v. San Juan Star, Inc.*, 377 F.3d 111, 118 n.9 (1st Cir. 2004) (citation omitted). In addition, Molina includes several responses and additional facts drafted as legal arguments, which Local Civil Rule 56 does not permit. *See, e.g.*, Docket No. 106, ¶¶ 72, 76, 103, 145, 147, 157, 166, 178, 188, 207, 219; *see also MVM Inc. v. Rodríguez*, 568 F. Supp. 2d 158, 163 (D.P.R. 2008) ("Nowhere in [Local Civil Rule 56] does it state that a party may make legal arguments or conclusory statements of mixed law and fact regarding outstanding disputes between the parties."). The First Circuit has consistently warned that litigants ignore Local Civil Rule 56 at their peril. *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007). Therefore, the Court will disregard any facts that do not comply with Local Civil Rule 56.

## II.    Factual Findings

The following factual findings are taken from the Parties' statements of uncontested facts and supporting documentation. The Court has only credited facts properly supported by specific and accurate record citations in accordance with Local Civil Rule 56(e). Moreover, "[t]he court [has] no independent duty to search or consider any part of the record not specifically referenced in the [P]arties' separate statement of facts." Local Civil Rule 56(e); *see Carreras v. Sajo, Garcia & Partners*, 596 F.3d 25, 31 (1st Cir. 2010).

---

[2] *See, e.g.*, Docket No. 106, ¶¶ 1, 3, 4 (cited twice), 23, 33, 51, 54, 64, 65 (cited twice), 94, 105, 106, 112, 113, 114, 139, 147, 191, 192, 194, 204, 215, 216, 217, 218, 219, 220, 221. Further, the Court notes that the Municipality also cited to Molina's Complaint—albeit not the Amended Complaint—approximately four times in its SUMF. *See, e.g.*, Docket No. 96, ¶¶ 2, 3, 4, 5.

CIVIL NO. 18-1079 (JAG)                                                          4

The Court makes the following findings of fact:

1.      On October 1, 2014, Molina began working for the Municipality as the Assistant
Director of the Purchases and Auctions Office ("the PAO"). Docket Nos. 102-1 at 3; 106 at 2. In this
role, Molina was responsible for the purchase of necessary materials for all departments of the
Municipality. Docket Nos. 96 at 1; 106 at 2. From October 2014 to March 11, 2015, Magdiel Pérez
Gonzalez ("Mr. Pérez), the Municipal Secretary for the Municipality, supervised Molina. Docket
Nos. 96 at 2; 102-1 at 6; 106 at 4.

2.      In November 2014, Molina shared her concerns with Mr. Pérez regarding
irregularities in the purchasing process and suppliers frequenting the PAO who were constantly
awarded purchase orders. Docket Nos. 106-2 at 10; 119-2 at 24-25.

3.      On December 5, 2014, Mr. Pérez issued a letter to Molina summarizing the issues
discussed during a November 24, 2014 meeting. Docket No. 102-3. The letter warned Molina about
several issues related to her performance as Assistant Director of the PAO. *Id.* The letter detailed
aspects of Molina's responsibilities, including timely responses to emails and telephone calls,
supervision of employees, general impressions and comments while in the office, following up
with the PAO, relationship with colleagues, follow up on sales in process, and attendance issues.
*Id.*[3]

4.      During December 2014, Molina attended a meeting with Mr. Pérez and Marta Vera
("Ms. Vera"), the Director of the Office of Human Resources and Labor Relations of the
Municipality, regarding her attendance. Docket Nos. 102-1 at 8-9; 102-4 at 8, 10.

5.      On January 26, 2015, Molina reported to Ms. Vera that she learned of irregular
processes related to a purchase at Toys "R" Us and several projects at the Hiram Bithorn Stadium.
Docket Nos. 102-1 at 10-11; 119-2 at 59.[4] The next day, Ms. Vera told Andrés García ("Mr. García"),
the City Administrator of the Municipality,[5] about Molina's allegations regarding a fraudulent
purchase order scheme at the PAO. Docket Nos. 96 at 4; 102-4 at 14; 102-5 at 3; 106 at 13. Mr. García
then referred the matter to attorney José Orlando López ("Attorney López"), a member of Mayor
Carmen Yulín Cruz-Soto's ("Mayor Cruz") advisory group, instructing him to speak with Molina
regarding the allegations and recommend a course of action. Docket Nos. 96 at 5; 102-4 at 7; 102-
5 at 4; 106 at 14. Attorney López then contacted Molina and asked that she call him. Docket Nos.
96 at 5; 102-1 at 14; 106 at 15. Molina spoke with Attorney López over the phone on various

---

[3] Molina claims that the November 24, 2014 meeting never occurred. *See* Docket Nos. 102-3; 106 at 6; 119-2 at 28.
Nevertheless, in her deposition Molina admitted that she attended a meeting with Mr. Pérez in mid-November 2014
and she signed as received a copy of the December 5, 2014 letter. Docket Nos. 102-1 at 7; 102-3 at 1; 119-2 at 47. Molina
did not respond to the letter or object to the contents of the letter. *See* Docket No. 119-2 at 48.
[4] This was the first time that Molina informed Ms. Vera about an alleged fraudulent purchase order scheme at the
PAO. Docket Nos. 102-4 at 13; 119-2 at 96-97.
[5] Mr. García served as the City Administrator for the Municipality from January 2013 to December 2016. Docket Nos.
96 at 4; 102-5 at 2; 106 at 14.

CIVIL NO. 18-1079 (JAG)                                                    5

occasions. Docket Nos. 96 at 5; 102-1 at 15; 106 at 15. On March 11, 2015, Attorney López and Molina met in person. Docket Nos. 96 at 5; 102-1 at 16; 106 at 16.

6.        Molina claims that she was denied payment for overtime work performed at the San Sebastián Festival in 2015. Docket Nos. 96 at 9; 102-1 at 27; 106 at 31.

7.        In February 2015, Molina anonymously contacted the FBI and the Comptroller. Docket No. 119-2 at 83-84.

8.        On March 10, 2015, Molina texted Ms. Vera, "I am on my way to the FBI . . . and I received a text from Mr. López. But it's too late, I'll keep you informed." Docket Nos. 102-1 at 18; 106 at 44-45; 119-2 at 86; 120 at 58-59.

9.        On March 10, 2015, Ms. Vera told Molina that she had lost Mr. Pérez's trust. Docket No. 119-2 at 90.[6] Ms. Vera informed Molina that she would be transferred to another role. *Id*. at 93. Molina asked Ms. Vera what would happen if she rejected the transfer; Vera responded that rejection would constitute insubordination and result in Mr. García terminating her. *Id*. at 94.

10.        On March 11, 2015, Molina received a letter from the Municipality notifying her that she would be transferred to the Department of Social Community Development effective March 16, 2015 due to an urgent need for service in that department. Docket Nos. 102-1 at 6; 102-6. The letter stated that "[a]s a result of this [administrative] detachment, the status of the position that [Molina] occup[ies] will remain unaltered, [her] salary and fringe benefits to which [she is] entitled to." Docket No. 102-6; *see also* Docket No. 102-1 at 19. The letter also stated that Molina needed to report to Sara I. Benítez ("Ms. Benítez"), Director of the Department of Social Community Development for the Municipality. *Id*.

11.        Ms. Benítez served at the helm of a large department at the Municipality and needed additional staff. Docket No. 102-7 at 4. Ms. Benítez testified that she "was looking for someone . . . from the development area" and that she "had been asking to allow [her] . . . to recruit someone." *Id*. at 3-4. Ms. Benítez also testified that she met Molina when Ms. Vera and Mr. García recommended Molina to work in her department. Docket Nos. 96 at 6; 102-7 at 3-4; 106 at 19.

12.        When Molina was transferred from the PAO to the Department of Social Community Development, Mr. Pérez no longer supervised her. Docket No. 102-1 at 6.

---

[6] Although this statement constitutes hearsay, it may be admitted for the nonhearsay purpose of its effect on Molina. *See Donato Aponte Navedo v. Nalco Chem., Inc.*, 848 F. Supp. 2d 171, 181 (D.P.R. 2012) (finding that certain statements, while "inadmissible to prove their truth," "are admissible for the nonhearsay purpose of showing their effect on the listener.").

CIVIL NO. 18-1079 (JAG)                                                    6

13.    On March 26, 2015, Molina found her car vandalized with the words "death" in the front windshield and "snitch" on another part of the vehicle. Docket No. 125-1 at 11.[7] Molina does not know who vandalized her car. Docket No. 102-1 at 22.

14.    After March 2015, Molina began to receive threatening phone calls at her telephone extension at work. Docket No. 106-6 at 2. One night while working late, her phone rang repeatedly. *Id.* When she answered, the person hung up. Then after several more calls, Molina answered, and the person on the other line said, "You piece of shit, when are you going to understand that you are more dead than alive?" *Id.* Molina does not know the identity of the callers. Docket No. 102-1 at 24-25.[8]

15.    In March 2015 and August 2015, Molina met with the FBI to report the alleged fraudulent purchase order scheme at the PAO. Docket No. 102-1 at 25-26. On March 10, 2015, Molina met with Agent Barreiro and another agent at the FBI offices in Hato Rey. Docket Nos. 106 at 48; 106-2 at 11; 120 at 64. In August 2015, Molina met with two other agents at the FBI offices in Guaynabo. Docket Nos. 106-2 at 12; 120 at 64.

16.    On June 23, 2015, Molina filed a complaint with the Comptroller regarding the alleged fraudulent purchase order scheme at the PAO. Docket No. 102-8 at 1.

17.    On August 5, 2015, Molina submitted a written narrative with the Comptroller regarding the alleged scheme at the PAO. Docket No. 102-9.

18.    Molina did not reveal to Ms. Benítez that she contacted the FBI or the Comptroller. Docket Nos. 96 at 8; 102-7 at 9; 106 at 24

19.    Sometime in 2015, Molina alleges that when she entered the elevator, Mr. Pérez and an employee named Esperanza Ruiz pushed her while playing with their hands, roughhousing, and laughing. Docket No. 119-2 at 114.

20.    In January 2016, Ms. Benítez designated Molina as Director of the Administrative Services Section at the Department of Social Community Development, in addition to Molina's existing duties as Director of the Human Resources Section at the Department of Social

---

[7] While Molina claims that her car was vandalized with the phrase "death to the snitch," the following exchange occurred during her deposition:

> Q: I think you are testifying that [the word "death"] is in another glass, then. Not the glass where it says "snitch," but rather in another area of the vehicle.
> A: No. It says "snitch" there, and it says "death" in the front.
> Q: But you agree with me in that you can't see "death" in that photograph; you can't read "death" in that photograph I showed you.
> A: I would have to check whether I have better photographs than that one.

Docket No. 125-1 at 11. Additionally, the phrase "death to the snitch" does not appear in the police report filed by Molina, and the report says that there was only damage to the passenger-side window. *Id.* at 12-13.
[8] The record does not show when Molina received these threatening telephone calls, the number of calls received, or the statements exchanged during other calls.

CIVIL NO. 18-1079 (JAG)                                                                                          7

Community Development. Docket Nos. 96 at 7; 102-1 at 23; 106 at 23. This designation gave Molina more responsibilities as director of two areas of the Department of Social Community Development. Docket No. 102-4 at 25. In addition, Molina managed the entire administrative component, which included four offices. *Id.*

     21.    In December 2016, Ms. Benítez left her role as Director of the Department of Social Community Development and Ada Burgos Archilla ("Ms. Burgos") became interim director until July 1, 2017. Docket Nos. 96 at 8; 102-4 at 26; 102-10 at 2; 106 at 27.

     22.    On June 27, 2017, Ms. Burgos assigned Miriam Germán to replace Molina as the new Director of the Human Resources Section for the Department of Social Community Development. Docket No. 102-10 at 3. In response, Molina complained that Ms. Burgos "was stripping [Molina] of her functions and directorship," Docket No. 106 at 28, and told Ms. Vera that she was going to resign. Docket No. 102-4 at 26-27. Ms. Vera tried to convince her otherwise. *Id.* at 27.

     23.    On June 30, 2017, Molina resigned from her position at the Department of Social Community Development at the Municipality. Docket Nos. 96 at 9; 106 at 29; 102-11.

## STANDARD OF REVIEW

A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A fact is disputed if it could be resolved in favor of either party, and material if it potentially affects the outcome of the case. *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986)).

The movant bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000) (quoting *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997)). The non-movant must demonstrate "through submissions of evidentiary

CIVIL NO. 18-1079 (JAG)                                                                    8

quality [] that a trial worthy issue persists." *Iverson v. City of Bos.*, 452 F.3d 94, 98 (1st Cir. 2006)

(citations omitted).

     In evaluating a motion for summary judgment, the Court views the entire record "in the

light most hospitable to the party opposing summary judgment, indulging in all reasonable

inferences in that party's favor." *Winslow v. Aroostook Cty.*, 736 F.3d 23, 29 (1st Cir. 2013) (quoting

*Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir. 2000)). The court may safely ignore "conclusory

allegations, improbable inferences, and unsupported speculation." *Medina-Rivera v. MVM, Inc.*, 713

F.3d 132, 134 (1st Cir. 2013) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.

1990)). The Court cannot make credibility determinations or weigh the evidence, as these are jury

functions and not those of a judge. *See Anderson*, 477 U.S. at 255.

## ANALYSIS

### I.    Section 1983 Liability

     It is well-settled law that Section 1983 "is not itself a source of substantive rights, but

merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*,

490 U.S. 386, 393-94 (1989) (cleaned up). Under Section 1983, a plaintiff must allege that a person

acting under color of state law deprived him of a federal right. *Santiago v. Puerto Rico*, 655 F.3d 61,

68 (1st Cir. 2011) (citation omitted). A defendant has acted under color of state law if he has

abused the power "possessed by virtue of state law and made possible only because the wrongdoer

is clothed with the authority of state law . . . ." *United States v. Classic*, 313 U.S. 299, 326 (1941).

Further, to show deprivation of a federal right, "plaintiffs must show that the defendants' conduct

was the cause in fact of the alleged deprivation." *Rodriguez -Cirilo v. Garcia*, 115 F.3d 50, 52 (1st Cir.

1997) (citation omitted).

CIVIL NO. 18-1079 (JAG)                                                                                    9

In this case, Molina asserts that the Municipality is liable under Section 1983 for alleged First Amendment violations. The Municipality, in turn, argues that Plaintiff's 2015 transfer was a discrete employment action and, thus, is time-barred. Docket No. 97 at 16-17. The Municipality also contends that Molina has failed to establish (i) that the Municipality is liable under *Monell*, (ii) that the Municipality violated her First Amendment rights, or (iii) that she was constructively discharged. *Id.* at 7-23. The Court shall address each argument in turn.

### A. Timeliness of Section 1983 Claim

Molina's First Amendment retaliation claim under Section 1983 appears to be based on two theories: (i) she was transferred from the PAO to the Department of Social Community Development in March 2015 after reporting an alleged fraudulent purchase order scheme at the PAO to senior management, the FBI, and the Comptroller; and (ii) she was forced to resign from her employment after being subjected to a hostile work environment for engaging in protected conduct. Docket Nos. 46 at ¶¶ 5.59, 5.69, 6.2-6.3, 6.6; 97 at 1; 111 at 10-13. The Municipality argues that any claim related to the March 2015 transfer is time-barred. Docket No. 97 at 16-17. The Court agrees.

Because Section 1983 has no statute of limitations, claims brought under this statute "borrow [ ] the appropriate state law governing limitations." *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 5 (1st Cir. 2007) (quoting *Poy v. Boutselis*, 352 F.3d 479, 483 (1st Cir. 2003)). "In Puerto Rico, [Section] 1983 claims are subject to a one-year statute of limitations." *Ayala-Sepúlveda v. Mun. of San Germán*, 671 F.3d 24, 30 (1st Cir. 2012) (citing *Marrero-Gutierrez*, 491 F.3d at 5). "[S]ection 1983 claims accrue when the plaintiff knows, or has reason to know, of the injury on which the action is based." *Marrero-Gutierrez*, 491 F.3d at 5 (cleaned up).

CIVIL NO. 18-1079 (JAG)                                                                          10

Molina's 2015 transfer to another office constitutes a discrete employment action. *See Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir. 2015). Discrete acts of discrimination are "events [which] constitute specific employment occurrences with the potential for concrete adverse consequences on plaintiff's employment status." *Rojas v. Principi*, 326 F. Supp. 2d 267, 276 (D.P.R. 2004).[9] Thus, a discrete act is an independent discriminatory or retaliatory action that occurs on a particular day. *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009). "Each discrete discriminatory act starts a new clock for filing charges . . . the statute is triggered upon the initial occurrence of the discrete adverse employment action, even if the effect of the employer's [actions] continues to be felt by the employee for as long as he remains employed." *Ayala*, 780 F.3d at 57-58 (cleaned up); *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges[] [b]ecause each discrete act starts a new clock for filing charges alleging that act.") (cleaned up); *Carpinteria Valley Farms, Ltd.*, 344 F.3d at 829 ("Although *Morgan* was a Title VII case, and the present case is a [Section] 1983 action, we have applied *Morgan* to bar [Section] 1983 claims predicated on discrete time-barred acts, not-withstanding that those acts are related to timely-filed claims.").

Molina alleges that the Municipality retaliated against her for exercising her First Amendment rights by transferring her from the PAO to the Department of Social Community

---

[9] Although *Rojas* is a Title VII case, courts have applied the Title VII definition of "discrete act" to Section 1983 claims. *See O'Connor v. City of Newark*, 440 F.3d 125, 127-29 (3d Cir. 2006); *Sharpe v. Cureton*, 319 F.3d 259, 267-68 (6th Cir. 2003); *Hildebrandt v. Ill. Dept. of Nat. Res.*, 347 F.3d 1014, 1036 n.18 (7th Cir. 2003); *Carpinteria Valley Farms, Ltd. v. Cnty of Santa Barbara*, 344 F.3d 822, 829 (9th Cir. 2003); *see also Long v. Howard Univ.*, 512 F. Supp. 2d 1, 16 (D.C. 2007) (citation omitted) (noting that "the concept of 'discrete act' . . . is not limited to the employment context.").

CIVIL NO. 18-1079 (JAG)                                                                                    11

Development on March 11, 2015. Docket No. 111 at 8. However, Molina did not initiate the instant

action until February 12, 2018 and, thus, any retaliation claim related to the March 2015 transfer

is time-barred. Molina argues, however, that any adverse employment action that occurred

outside the limitations period remains actionable under the "continuing violation" doctrine.

Docket No. 111 at 26-27. Under the "continuing violation" doctrine, Molina could "incorporate

allegations that would ordinarily be time-barred if they are part of the same unlawful employment

practice and at least one act falls within the [applicable limitations] period." *Ayala-Sepúlveda*, 727

F. Supp. 2d at 73 (cleaned up). This doctrine, however, does not apply to "discrete" acts, "which

are easy to identify and immediately actionable"—including, as in this case, a transfer to another

work area. *Ayala*, 780 F.3d at 58. Rather, the one-year statute of limitations for the March 2015

transfer began to run upon its initial occurrence, even if Molina continued to feel the effect of that

employment action for as long as she remained employed with the Municipality. *See Morán-Vega v.*

*Cruz-Burgos*, 537 F.3d 14, 20 (1st Cir. 2008) ("Section 1983 claims generally accrue when the

plaintiff knows, or has reason to know of the injury on which the action is based, and a plaintiff

is deemed to know or have reason to know at the time of the act itself and *not at the point that the*

*harmful consequences are felt*.") (cleaned up).[10] For these reasons, Molina's First Amendment claim

under Section 1983 as to the March 2015 transfer is hereby **DISMISSED WITH PREJUDICE**.[11]

---

[10] Moreover, the continuing violation doctrine "is only available where a plaintiff was unaware of the discriminatory nature of otherwise time-barred conduct at the [moment] that it occurred." *Dávila-Feliciano v. P.R. State Ins. Fund Corp.*, 754 F. Supp. 2d 351, 365 (D.P.R. 2010). This is not the case here.

[11] Even if this claim were timely, Molina has failed to meet the standard for a First Amendment retaliation claim as to the March 2015 transfer. Such claims are subject to a "three-part inquiry":

> First, a court must determine whether the employee spoke as a citizen on a matter of public concern. Second, the court must balance . . . the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in

CIVIL NO. 18-1079 (JAG)                                                                    12

### B. *Monell* Liability

Molina argues that the Municipality should be held liable for First Amendment violations under Section 1983 for the acts and omissions of Mr. García, the City Administrator of the Municipality. Docket No. 111 at 15-18. The Municipality counters that Molina fails to provide evidence showing that the Municipality retaliated against her by affecting her conditions of employment pursuant to municipal policy or custom as required under *Monell v. City of New York*, 436 U.S. 658 (1978). Docket No. 97 at 9. The Municipality also asserts that Molina fails to identify an action by Mayor Cruz, Mr. García, or Ms. Burgos to establish an official policy to retaliate against her. *Id.* at 12-13. Lastly, the Municipality contends that Molina fails to cite precedent showing that *Monell* liability could attach to the Municipality based on the actions of the City Administrator. Docket No. 121 at 8.

Municipalities may be sued directly under Section 1983 for monetary, declaratory, and injunctive relief. *Monell*, 436 U.S. at 690. For a municipality to be liable under Section 1983, however, a plaintiff must prove that a municipal policy or custom was the "moving force [behind]

---

promoting the efficiency of the public services it performs through its employees. Third, the employee must show that the protected expression was a substantial or motivating factor in the adverse employment decision. If all three parts of the inquiry are resolved in favor of the plaintiff, the employer may still escape liability if it can show that "it would have reached the same decision even absent the protected conduct.

*Decotiis v. Whittemore*, 635 F.3d 22, 29 (1st Cir. 2011) (cleaned up). Defendant concedes the first two elements, but claims that Molina has not shown that her protected conduct was a substantial or motivating factor in the March 2015 transfer. Docket No. 97 at 14. The Court agrees. Molina's transfer from the PAO to the Department of Social Community Development did not entail a reduction in salary or fringe benefits. Docket Nos. 102-6; 102-1 at 19. Thus, it did not constitute an adverse employment action. *See Ayala-Sepúlveda*, 671 F.3d at 31-32 ("An employment action is adverse if it results in a work situation unreasonably inferior to the norm for the position.") (cleaned up).

the constitutional violation." *Id.* at 694; *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("[M]unicipal liability under [Section] 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."). Therefore, a plaintiff must prove a deprivation of a constitutional right through "the execution of the government policy or custom." *Monell*, 436 U.S. at 690-95; *see also Aviles-Alicea v. Mun. de San Juan*, 519 F. Supp. 2d 226, 240 (D.P.R. 2007). "In addition, municipal liability attaches where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered." *Concepción v. Mun. of Gurabo*, 560 F. Supp. 2d 139, 142 (D.P.R. 2008). The First Circuit has stated that

> Whether an official has this requisite level of specific policymaking authority is a matter of state law. Courts must look to state law, including valid local ordinances and regulations, for descriptions of the duties and obligations of putative policymakers in the relevant area at issue. This does not mean that we look simply to state law labels to determine whether an official is a final policymaker, but our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law.

*Walden v. City of Providence*, 596 F.3d 38, 56 (cleaned up).

Here, Molina cites P.R. LAWS ANN. tit. 21, § 4258 ("Section 4258") to argue that Mr. Garcia as the City Administrator exercises the administrative functions of Mayor Cruz. Docket No. 111 at 16. Molina adds that Section 4258 gives Mr. García the power to "design, formulate, and apply a personnel administration system for the municipality, according to the provisions of this Act . . . and promulgate rules which municipal officials and employees shall be subject to in the performance of their duties and obligations." *Id.* Molina avers that Mr. García was the City Administrator when personnel actions were taken against Molina, including her transfer from the

CIVIL NO. 18-1079 (JAG)                                                                                    14

PAO to the Department of Social Community Development on March 11, 2015, and that his

position "was cloaked with statutory power to decide or influence final employment decisions."

*Id*.

Although Mr. García had the power to "promulgate rules which municipal officials and

employees shall be subject to in the performance of their duties and obligations," P.R. LAWS

ANN. tit. 21, § 4258, it does not follow that Mr. García had *final* policymaking authority to

establish municipal policy. Assuming he did, Mr. García was only personally involved in the

March 2015 transfer, not the other alleged adverse employment actions alleged by Molina. And

the record is devoid of evidence that Mr. García's actions were part of an official policy or

customary practice commonly accepted by him, that Mr. García knew that Molina had filed a

report with the FBI and the Comptroller, or that the transfer was motivated by retaliatory

animus.[12] Thus, the Court cannot conclude that the Municipality is liable under *Monell*.[13]

C. **Constructive Discharge Claim**

Molina brings a claim for constructive discharge as a result of the hostile work

environment that she allegedly endured after reporting the alleged fraudulent purchase order

---

[12] The only evidence that Mr. García knew that Molina filed a report with the FBI and the Comptroller is Molina's own statement that Ms. Vera told him. Docket No. 119-2 at 87. This constitutes inadmissible hearsay. Molina did not witness anyone informing Mr. García of her protected conduct and, thus, her assertion lacks a basis in personal knowledge. *See Est. of Usaamah Abdullah Rahim v. Doe*, 51 F.4th 402, 412 (citing Fed. R. Civ. P. 56(c)(4)) ("To be admissible at summary judgment, an affidavit or declaration must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Moreover, in Molina's own deposition, she admitted that Ms. Vera did not tell Molina what she had told Mr. García, Docket No. 119-2 at 87, 89; and Mr. García denies he was ever informed about Molina's communications with the FBI or Comptroller. Docket No. 102-5 at 5-6. Moreover, Molina has not refuted Defendant's assertion that there was an urgent need for additional support at the Department of Social Community Development.

[13] The Court adds that the record is also devoid of evidence that Mayor Cruz, Mr. Pérez, or Ms. Burgos—assuming *arguendo* that Mr. Pérez and Ms. Burgos had final policy making authority, which Molina does not contend—were personally involved in the decision-making behind the challenged employment actions, that they either sanctioned or ordered other officials to carry out the challenged conduct, or that such actions were part of an official policy or customary practice commonly accepted by them.

CIVIL NO. 18-1079 (JAG)                                                                    15

scheme at the PAO, which left her no choice but to resign from her employment with the Municipality. Docket Nos. 46 at 17-22, 23-25; 111 at 10-13.

"To establish constructive discharge, a plaintiff generally must show that her working conditions were so difficult or unpleasant that a reasonable person in plaintiff's position would have felt compelled to resign." *Piazza-Aguirre v. Mayagüez Resort & Casino, Inc.*, 59 F. Supp. 3d 340, 351 (D.P.R. 2014) (citing *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 28 (1st Cir. 2002)). "The standard is objective, not subjective" and a showing that Plaintiff suffered from "the ordinary slings and arrows that workers routinely encounter in the workplace" is insufficient to show constructive discharge. *See id.* (quoting *De La Vega*, 377 F.3d at 117). "[R]ather, an employee must show that, *at the time of [her] resignation*, [her] employer did not allow h[er] the opportunity to make a free choice regarding h[er] employment relationship. Thus, in order for a resignation to constitute a constructive discharge, it effectively must be void of choice or free will." *Torrech-Hernandez v. Gen. Electric*, 519 F.3d 41, 50 (1st Cir. 2008) (cleaned up). The bar for a constructive discharge claim is high.

In this case, Molina rests on the alleged pattern of retaliatory hostile work environment to support her construction discharge claim. She alleges that she faced a pattern of retaliation, including hostility and unwarranted reprimands from her supervisor Mr. Pérez, excessive supervision,[14] harassment and mocking from other employees, threatening phone calls, vandalization of her car, and failure to pay her overtime for her work at the 2015 San Sebastian Festival. Docket Nos. 46 at 17-21; 111 at 10-13. Although the Court is sympathetic to what Molina

---

[14] "[P]lacing an employee under stricter supervision—in and of itself—does not qualify as a materially adverse employment action." *Godoy v. Maplehurst Bakeries, Inc.*, 747 F. Supp. 2d 298, 314 (D.P.R. 2010) (citing *Marrero*, 304 F.3d at 25).

CIVIL NO. 18-1079 (JAG)                                                                16

experienced, the severity and pervasiveness that must be shown for constructive discharge is greater than that needed for a hostile work environment claim. *Marrero*, 304 F.3d at 28 (citing *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir.1992)).

        Here, Molina has failed to adduce sufficient admissible evidence to show that she suffered "harassment so severe and oppressive that staying on the job while seeking redress—the rule save in exceptional cases—is intolerable." *Reed v. MBNA Mktg. Sys., Inc.*, 333 F.3d 27, 33 (1st Cir. 2003) (cleaned up). First, the Court cannot attribute the vandalism and threatening phone calls to the Municipality because there is no evidence as to who committed these acts or that the Municipality sanctioned them. Second, many of the alleged instances of harassment are undated, so neither the Court nor a jury can determine the pervasiveness of the harassment. Nor does Molina provide specific details as to the alleged harassing comments to determine the severity of the harassment. Furthermore, Molina alleges that several employees of the Municipality harassed and insulted her but provides no evidence that these employees were aware of her protected conduct, thus failing to establish a causal nexus between the protected conduct and the harassment.

        Moreover, most of the instances of harassment alleged by Molina occurred between 2014 and 2015, and Molina resigned in June 2017, more than two years after engaging in the protected conduct. *See* Docket Nos. 46 at 17-19; 111 at 10-12. Aside from that, there are allegations as to two separate incidents in 2016, Docket No. 111 at 12; and two incidents in 2017, *id*. at 13. Molina's "resignation came too late after the offensive conduct to be labeled a constructive discharge. If a plaintiff does not resign within a reasonable time period after the alleged harassment, [she] was not constructively discharged." *Landrau-Romero v. Banco Popular de P.R.*, 212 F.3d 607, 613 (1st Cir. 2000) (citing *Smith v. Bath Iron Works Corp.*, 943 F.2d 164, 167 (1st Cir. 1991)).

CIVIL NO. 18-1079 (JAG)                                                                17

Molina has simply failed to show that, at the time of her resignation on June 30, 2017, "the working conditions imposed by the [Municipality] had become so onerous, abusive, or unpleasant that a reasonable person in [Molina's] position would have felt compelled to resign." *Suarez*, 229 F.3d at 54. Accordingly, Molina's constructive discharge claim is hereby **DISMISSED WITH PREJUDICE**.

## II.    State Law Claims

### A.  Law 115

"Law 115 prohibits employers from discriminating against employees for offering or attempting to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico." *Figueroa v. Alejandro*, 597 F.3d 423, 432 (1st Cir. 2010) (citing P.R. LAWS ANN. tit 29, § 194a(a)). To succeed on this claim, Molina must establish that she "engaged in activity protected under Law 115 and then suffered discrimination [through an adverse employment action] at work." *Id*. at 433 (citing *Velez v. Janssen Ortho*, LLC, 467 F.3d 802, 809 (1st Cir. 2006) and *MVM, Inc.*, 568 F. Supp. 2d at 176-77).

Adverse employment actions include "discriminatory actions that affect the terms and conditions of employment" such as "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." *Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77, 94 (1st Cir. 2018) (cleaned up).[15] Retaliatory employment actions also include "employer actions that would have been materially

_____

[15] "Puerto Rico's anti-retaliation statute—Law 115—is largely symmetrical in scope and has parallel evidentiary mechanisms to the anti-retaliation provisions in Title VII." *Rivera-Rivera, Inc.*, 898 F.3d at 97.

CIVIL NO. 18-1079 (JAG)                                                              18

adverse to a reasonable employee, defined as actions that are harmful to the point that they could

well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at

95 (cleaned up).

      Here, the record is devoid of any discrete action that negatively affected Molina's

compensation, benefits, or other terms of employment. For example, when Molina transferred

from the PAO to the Department of Social Community Development, her salary and fringe benefits

remained unaltered. Docket Nos. 102-6; 102-1 at 19. In addition, she received a promotion while

serving in the Department of Social Community Development. *See* Docket Nos. 96 at 7; 102-1 at 23;

106 at 23. Molina also alleges that the Municipality failed to pay her overtime for her work in the

2015 San Sebastian Festival, Docket No. 46 at 16, but she has failed to show by a preponderance

of the evidence that she was entitled to this overtime pay. *See infra* II.C. Molina has also failed to

show the existence of a hostile work environment. *See supra* I.C.

      Even if Molina could establish that she experienced an adverse employment action, Molina

has not adduced sufficient evidence to establish causation under Law 115. Molina has failed to

show that her protected conduct was a substantial or motivating factor in the March 2015

transfer, especially since her salary and fringe benefits were not affected. *See Ayala-Sepúlveda*, 671

F.3d at 32. Nor has she shown that the protected conduct in 2015 was a substantial or motivating

factor for the alleged hostile work environment. Lastly, Molina does not provide any evidence that

the employees who allegedly harassed her knew of her protected conduct.

      Accordingly, Molina's Law 115 claim is hereby **DISMISSED WITH PREJUDICE**.

CIVIL NO. 18-1079 (JAG)                                                                 19

B.  **Articles 1802 and 1803**

Molina brings claims under Articles 1802 and 1803 for "threats, intimidation, defamation and attacks to her professional reputation, in violation of her constitutional right to privacy and dignity, as well as other extreme and outrageous conduct, with the intent to cause, or reckless disregard of the probability of causing, Plaintiff to suffer emotional distress." Docket No. 46 at 26-27. Article 1802, Puerto Rico's general tort statute, imposes liability on a person who "causes damages to another through fault or negligence." P.R. LAWS ANN. tit. 31, § 5141. On the other hand, "Article 1803 applies the principle of *respondent superior* to Article 1802 claims." *Santana-Colon v. Houghton Mifflin Harcourt Pub. Co.*, 81 F. Supp. 3d 129, 139 (D.P.R. 2014) (citing P.R. LAWS ANN. tit. 31, § 5142 and *Pagán Colón v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 16 (1st Cir. 2012)).

First, "[a]s a general rule, in the face of conduct by an employer that has been typified and penalized by special labor legislation, the employee only has recourse to the relief of said Act, and is barred from seeking additional compensation under Article 1802 of the Civil Code." *Santini Rivera v. Serv. Air, Inc.*, 137 D.P.R. 1, 16 (1994))). "An additional claim under Article 1802 may only be brought by the employee-plaintiff if it is based on tortious or negligent conduct distinct from that covered by the specific labor law(s) invoked." *Muñoz v. Sociedad Española De Auxilio Mutuo y Beneficiencia De P.R.*, 671 F.3d 49, 59 (1st Cir. 2012) (cleaned up). Here, any claim asserted by Molina under Articles 1802 and 1803 based on the same conduct underlying Molina's Law 115 claim cannot be brought and, therefore, is hereby **DISMISSED WITH PREJUDICE**.

Second, Molina has failed to meet the elements of defamation. She has failed to identify specific alleged defamatory comments or provide any evidence proving "that the information is

false." *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 98 (1st Cir. 1996) (cleaned up). Therefore, this claim is hereby **DISMISSED WITH PREJUDICE.**

Third, Molina alleges violations of her constitutional right to privacy and dignity. Docket Nos. 46, ¶ 6.22; 111 at 26. The right to privacy under Puerto Rico law is infringed when "limitations are placed on an individual's faculty to make personal, family, or private decisions." *Segarra v. Royal Bank de P.R.*, 145 D.P.R. 178, 202 (1998) (citations omitted). However, "[a] mere feeling of uneasiness in the workplace due to some labor-management situation does not constitute a violation of the right of privacy by the employer." *Id.* at 207. "[T]he plaintiff must present evidence of the employer's *concrete* actions that impinge upon the plaintiff's private or family life," and provide specific instances that can be construed "as insults or humiliations violating her constitutional rights." *Id.* at 203, 206 (emphasis added); *see also Rivera Rosa v. Citibank, N.A.*, 567 F. Supp. 2d 289, 302-03 (D.P.R. 2008) (dismissing privacy rights claim at the summary judgment stage because there were "no demeaning comments made towards [the plaintiff]" and "the record [was] devoid of a single instance that may be considered as an 'insult or humiliation' or that might be considered as a violation of [the plaintiff]'s constitutional rights."). Here, Molina's argument in support of this claim is limited to a conclusory statement that "the Municipality subjected Molina or caused her to be subjected to threats, intimidation and attacks to her dignity, in violation of her constitutional right to privacy." Docket No. 111 at 26. This general, conclusory statement is insufficient. Molina has put forth no evidence from which a jury could reasonably conclude that Molina was subjected to insults or humiliation rising to the level of a violation of her constitutional right to privacy and dignity, or that the Municipality took any concrete actions that impinged on Molina's private or family life. Accordingly, Molina's claim for a violation of her constitutional right to privacy and dignity is hereby **DISMISSED WITH PREJUDICE.**

Finally, Molina brings a claim for intentional infliction of emotional distress, Docket No. 46, ¶ 6.22, which requires a showing "1) that the defendant engaged in extreme and outrageous conduct; 2) that such conduct was intended to cause the plaintiff severe emotional distress, or was done with reckless disregard for the plaintiff's emotional state; 3) that the plaintiff suffered severe emotional distress; and 4) that the severe distress is causally related to the extreme and outrageous conduct." *Soto-Lebron v. Fed. Express Corp.*, 538 F.3d 45, 57 (1st Cir. 2008) (citations omitted). Even accepting Molina's proffered version of the events as true, she has simply failed to show that Defendants engaged in conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 58 (citations omitted). Accordingly, Molina's intentional infliction of emotional distress claim is hereby **DISMISSED WITH PREJUDICE**.

### C. Payment of Statutory Benefits

Molina also contends that the Municipality failed to liquidate her vacation pay, summer bonus, and overtime hours for her work at the 2015 San Sebastian Festival. Docket No. 46, ¶¶ 6.18-6.19. However, she has failed to show by a preponderance of the evidence that she is entitled to this relief. While Molina claims that "during high volume work periods, such as during the San Sebastian Festivities, the executives were compensated accordingly for the extra work put in," Docket No. 106 at 2, the source cited does not show that executive employees received overtime pay during the 2015 San Sebastian Festival. *See* Docket No. 119-1 (merely stating that "one year [we/they] were unable to compensate or did not compensate the directors, but then the next year, I think everyone was."); *see also* Docket No. 102-1 at 28 (Molina testified that she only accrued five hours of overtime because she was an executive employee and added, "[e]verything else, Saturdays

CIVIL NO. 18-1079 (JAG)                                                     22

and Sundays when I would always work and everything else was . . . I did not get paid for that."). Accordingly, Molina's payment of statutory benefits claim is hereby **DISMISSED WITH PREJUDICE**.

CONCLUSION

For the aforementioned reasons, Defendant's Motion for Summary Judgment is hereby **GRANTED**. Molina's claims are hereby **DISMISSED WITH PREJUDICE**. Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Tuesday, June 27, 2023.

<u>s/ Jay A. Garcia-Gregory</u>
JAY A. GARCIA-GREGORY
United States District Judge
